510 S.E.2d 226

**The STATE, Respondent,**

v.

**Fernando Arboleda BALLEN, Appellant.**

No. 2907.

Court of Appeals of South Carolina.

Submitted Nov. 4, 1998.

Decided Nov. 23, 1998.

---

Assistant Appellate Defender Robert M. Pachak, of SC Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Deputy Attorney General John W. McIntosh and Assistant Deputy Attorney General Salley W. Elliott, all of Columbia; and Solicitor Joseph J. Watson, of Greenville, for respondent.

GOOLSBY, Judge:

Fernando Arboleda Ballen appeals his conviction for driving under suspension. We affirm.

## FACTS

Fernando Arboleda Ballen was detained by a Greenville Police Officer for failure to stop at a stop sign. Ballen was unable to produce a driver's license, and a check by the officer revealed that Ballen's license had been suspended. Ballen was indicted for driving under suspension and tried before a jury in Greenville County on October 9, 1996. Ballen was

found guilty and sentenced to 60 days imprisonment and a fine of $500 (plus a $310 surcharge). The case now comes before this court on an *Anders* brief and a petition to be relieved as counsel. Ballen has also submitted a *pro se Anders* response brief.

### DISCUSSION

■ Ballen first argues (in counsel's *Anders* brief) that it was error to admit certain hearsay testimony by the arresting officer. The officer testified that he relayed Ballen's name and date of birth to the dispatcher and obtained a match with a suspended license. Because this required testimony about what the dispatcher said over the radio, it was hearsay. The testimony does not fall into any of the exceptions to the hearsay rule, so it was error to admit it. The error, however, was harmless because the testimony was cumulative of other evidence properly admitted. *See State v. Johnson,* 298 S.C. 496, 499, 381 S.E.2d 732, 733 (1989) ("The admission of improper evidence is harmless where it is merely cumulative to other evidence."). Testimony and documents presented by the prosecution established both that Ballen's license had been suspended and that he knew of the suspension. The prosecution entered into evidence a certified letter, with a return receipt signed by Ballen, informing him of the suspension of his license. Additionally, the arresting officer testified that a certified copy of Ballen's driving record showed that his license had never been reinstated. Both of these facts were entered without objection. These same facts were later admitted by Ballen when he testified during the defense case.

■ Ballen next argues (in his *pro se Anders* response brief) that the jury oath administered by the clerk of court was error because it referred to driving under the influence rather than driving under suspension.[1] Ballen's counsel objected to this oath shortly after it was administered.

The requirement for and form of the jury oath in South Carolina apparently originated in the common law. *See* 50A C.J.S. *Juries* § 499 at 547 (1997) ("The form of oath at

---

1. The oath does not appear in the record, but the trial judge refers to the mistake in the transcript of the trial.

common law in criminal cases was: 'You shall well and truly try, and true deliverance make between our Sovereign Lord the King and the prisoner at the bar, whom you shall have in charge, and a true verdict give according to the evidence.  So help you God.'  In absence of statute [2] an oath substantially in this form is sufficient.") (original footnotes omitted and a footnote added).  The purpose of this common law oath is not to inform the jury of the nature of the charge against the accused, but rather to "impress upon the jury its solemn duty to carefully deliberate on the matter at issue."  47 Am.Jur.2d *Jury* § 217 at 897 (1995).

In view of the purpose of the oath, the failure to reference the correct charge did not prejudice Ballen, particularly as the trial judge referred to the correct charge both before the jury was seated and immediately after seating (through a corrective instruction).  As there is no prejudice and the oath otherwise accomplished its purpose, the misstatement by the clerk of the court is harmless.  *Cf. Battie v. Texas*, 551 S.W.2d 401 (Tex.Crim.App.1977) (holding that words added to the jury oath prescribed by statute did not invalidate the oath if all the statutory language was used); *Crisp v. Texas*, 87 Tex.Crim. 137, 220 S.W. 1104, 1106 (Tex.Crim.App.1920), *overruled on other grounds by Craig v. Texas*, 480 S.W.2d 680 (Tex.Crim. App.1972) (holding that omission of "So help you God" from the jury oath invalidated the oath because the phrase was "the very heart of the obligation").  *See also Connecticut v. Miller,* 202 Conn. 463, 522 A.2d 249 (Conn.1987) (holding that there is no constitutional right to a particular form of jury oath and that minor deviations from the jury-oath form prescribed by statute do not violate the defendant's constitutional right to a fair trial).

After review of the record as required by *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and *State v. Williams*, 305 S.C. 116, 406 S.E.2d 357 (1991), we find no other arguable issues.  Accordingly, we affirm the judg-

**2.** Though South Carolina has no statute mandating that an oath be given to jurors or prescribing a form for such oaths, there is a statute allowing an "affirmation" in the place of "an oath on The Holy Bible." S.C.Code Ann. § 14–7–1130 (Supp.1997).

ment of the trial court. We also grant counsel's petition to be relieved.[3]

**AFFIRMED.**

CURETON and HOWARD, JJ., concur.

---

**3.** Because oral argument would not aid the court in resolving any issue on appeal, we decide this case without oral argument pursuant to Rules 215, SCACR.